## ISRAEL CHERRY *vs.* REBECCA CHERRY.

Suffolk.    May 18, 1925. — June 27, 1925.

Present: RUGG, C.J., BRALEY, CROSBY, PIERCE, & CARROLL, JJ.

*Error, Writ of.    Equity Jurisdiction,* Contempt proceedings.

In a suit in equity in the Superior Court by a wife against her husband, a final decree was entered enjoining him from prosecuting divorce proceedings brought by him against her and then pending in a court of the State of Nevada.    Later, in the same court, on a petition for an attachment for contempt for failure of the husband to obey the decree, a decree was made in substance adjudging the husband in contempt, ordering him into custody of the sheriff, that "the case is continued for sentence for two weeks from this day," and that unless in that time the defendant purged "himself of contempt by taking proper and efficient methods to open and set aside" a decree which he had obtained in a court in Nevada against the plaintiff, an order was to be entered committing him to the custody of a sheriff "until he shall have taken such proper and efficient methods to open and set aside said decree"; and in the meantime he was admitted to bail.    On the day to which the case was continued, the defendant did not present himself for sentence, was defaulted, and sureties on his bail bond were defaulted. Three days before the time set for such appearance, the defendant had filed a petition for a writ of error to "reverse the final decree" which adjudged him in contempt.    *Held,* that

(1) It was not necessary to determine the difference between civil and criminal contempt;

(2) The order adjudging the defendant in contempt, ordering him into the custody of the sheriff, continuing the case to a time within which he was given an opportunity to purge himself of the contempt and admitting him to bail in the meantime, was in form anticipatory *nisi;*

(3) The decree sought to be reversed was not ripe for review as of right in any form of procedure;

(4) If the contempt proceeding was civil and equitable in its nature, the plaintiff in error could not prevail since a writ of error does not lie to correct errors of law in a decree or order in equity;

(5) If the contempt proceeding be treated as criminal in its nature, the plaintiff in error could not prevail because such a right lies in a criminal case only after judgment had been rendered; and such judgment had not been rendered, since no final sentence had been imposed;

(6) The same principle applied if the proceedings for contempt were treated as partly civil and partly criminal, because in such circumstances the criminal aspect predominated;

(7) If the contempt proceedings be regarded as *sui generis* and neither criminal nor civil, the same result follows, because there had been no ending of the contempt proceedings in the court in which they were pending.

PETITION, filed in the Supreme Judicial Court for the county of Suffolk on December 9, 1924, for a writ of error to reverse the final decree and order entered in the Superior Court on November 28, 1924, by order of *Hammond, J.,* whereby the petitioner was adjudged in contempt, as described in the opinion.

A writ of error and of *scire facias* issued and the case was adjourned to the full court. Material facts found in the record are described in the opinion.

The case was submitted on briefs.

*E. M. Dangel, J. J. Enright, & G. F. Grimes,* for the plaintiff in error.

*A. S. Allen & H. H. Davis,* for the defendant in error.

RUGG, C.J. This is a writ of error. The petition alleges in substance that the defendant in error brought in the Superior Court a suit in equity wherein she sought to enjoin the plaintiff in error, her husband, from prosecuting divorce proceedings brought by him against her and then pending in a court of the State of Nevada; that issue was joined in that suit and that, after a trial in which the judge made full findings to the effect that both parties were and had been for many years domiciled in this Commonwealth, and that the husband had not acquired in the State of Nevada a domicil sufficient to give the courts of that State jurisdiction over the subject matter of divorce, a final decree was entered enjoining the defendant, his servants, agents and attorneys from further prosecuting the action for divorce pending in the court of Nevada. The petition further alleges that a petition for contempt was brought against the plaintiff in error in the Superior Court in the same cause for the violation of said injunction, wherein the court made an order adjudging him to be in contempt.

Writ of error and writ of *scire facias* were issued. Pursuant thereto a full copy of the record of the Superior Court has been returned to this court. The defendant in error answered (1) a general denial as to the allegations of the petition and the assignments of error therein, and also (2) a plea of *in nullo est erratum.* Apparently the defendant in error has raised in truth no issue of fact and relies wholly

upon the plea that the record shows no error, except so far as she relies also upon the contention that this court has no jurisdiction. *Eliot* v. *McCormick*, 141 Mass. 194. *Perkins* v. *Bangs*, 206 Mass. 408.

It is manifest from the transcript of the record of the Superior Court that the petition for the attachment for contempt was made and filed in the original cause and that the subsequent proceedings thereon were treated as a part of that cause. *Cartwright's Case*, 114 Mass. 230, 239.

The distinction has been made in other jurisdictions between civil and criminal contempts. It has been referred to in some of our decisions. The occasion has not arisen for this court to discuss that subject with critical analysis and painstaking care. *New York Central Railroad* v. *Ayer*, *ante*, 122. We do not need to deal with that question in the case at bar. Reference is made simply to a few statements touching the existence of the distinction. In *Michaelson* v. *United States*, 266 U. S. 42, at page 64, it was said: "the proceeding for criminal contempt, unlike that for civil contempt, is between the public and the defendant, is an independent proceeding at law, and no part of the original cause." It was said by Chief Justice Taft in *Ex parte Grossman*, 267 U. S. 87, 111: " . . . it is not the fact of punishment but rather its character and purpose that makes the difference between the two kinds of contempts. For civil contempts, the punishment is remedial and for the benefit of the complainant, and a pardon cannot stop it. For criminal contempts the sentence is punitive in the public interest to vindicate the authority of the court and to deter other like derelictions." *Bessette* v. *W. B. Conkey Co.* 194 U. S. 324. *Matter of Christensen Engineering Co.* 194 U. S. 458. *Terminal Railroad Association of St. Louis* v. *United States*, 266 U. S. 17, 27.

In *Union Tool Co.* v. *Wilson*, 259 U. S. 107, at page 110, it was said: "Where a fine is imposed partly as compensation to the complainant and partly as punishment, the criminal feature of the order is dominant and fixes its character for purposes of review. *In re Merchants' Stock & Grain Co.*, 223 U. S. 639."

The circumstance that sentence of imprisonment is imposed does not of itself stamp the contempt as criminal in nature.   The whole subject was examined at large in *Gompers* v. *Bucks Stove & Range Co.* 221 U. S. 418.   It there was said at pages 442, 443: "If a defendant should refuse to pay alimony, or to surrender property ordered to be turned over to a receiver, or to make a conveyance required by a decree for specific performance, he could be committed until he complied with the order.   Unless these were special elements of contumacy, the refusal to pay or to comply with the order is treated as being rather in resistance to the opposite party than in contempt of the court.   The order for imprisonment in this class of cases, therefore, is not to vindicate the authority of the law, but is remedial and is intended to coerce the defendant to do the thing required by the order for the benefit of the complainant.   If imprisoned, as aptly said in *In re Nevitt*, 117 Fed. Rep. [448] 451, 'he carries the keys of his prison in his own pocket.'   He can end the sentence and discharge himself at any moment by doing what he had previously refused to do. . . .   The distinction between refusing to do an act commanded, — remedied by imprisonment until the party performs the required act; and doing an act forbidden, — punished by imprisonment for a definite term; is sound in principle, and generally, if not universally, affords a test by which to determine the character of the punishment."

The order on the petition for contempt in the case at bar was this: "After hearing, the respondent is adjudged in contempt and is ordered into custody of the sheriff, and the case is continued for sentence for two weeks from this day, viz.: until the twelfth day of December A. D. 1924, at four o'clock in the afternoon, and it is ordered that unless in that period the said respondent purges himself of contempt by taking proper and efficient methods to open and set aside the decree which he has obtained in the District Court of Nevada against the complainant in this action, an order is to be then entered committing said respondent to the custody of the sheriff of this county, until he shall have taken such proper and efficient methods to open and set aside said decree: In

the meanwhile, he is to be admitted to bail in the sum of $2,500, with two sureties for his appearance from day to day and to abide the order of the court."

That order was in form anticipatory *nisi.* The adjudication of contempt is plain and unequivocal, but there was no final decision on the matter. The direction is that, unless that defendant earlier purges himself of contempt, an order "is to be then" at the designated future date entered, to the effect that he be committed to the custody of the sheriff, not for a definite time but until he purges himself of contempt. If the case be treated as civil and equitable, it was still pending and a further decree was necessary to end it. *Plaisted* v. *Cooke,* 181 Mass. 118. *Loonie* v. *Wilson,* 233 Mass. 420, 423. *O'Brien* v. *O'Brien,* 238 Mass. 403, 407, and cases there collected. It was not ripe for review as of right in any form.

If the contempt proceeding is civil and equitable in its nature, the plaintiff cannot prevail. A writ of error does not lie to correct errors of law in a decree or order in equity. The words, "judgment in a civil action" in G. L. c. 250, § 3, do not refer to proceedings in equity. The writ of error is not available in proceedings in equity unless authorized by statute. No statute authorizes that writ in a case like the present. *Evans* v. *Hamlin,* 164 Mass. 239. *Mulrey* v. *Carberry,* 204 Mass. 378. *New York Central Railroad* v. *Ayer, supra.*

If the contempt proceeding in the case at bar be treated as criminal, the plaintiff cannot prevail. The writ of error lies in a criminal case only after a final judgment. *Cooke, petitioner,* 15 Pick. 234, 237. *Commonwealth* v. *Marsino,* 252 Mass. 224. The case at bar, treated as criminal in nature, had not gone to judgment. Sentence is the final judgment in a criminal case. *Commonwealth* v. *Dascalakis,* 246 Mass. 12, 19, and cases there collected. Sentence temporarily suspended or delayed by action of the court is not, or may not be, the final judgment until it becomes operative. As already pointed out, the order on the petition for contempt was anticipatory *nisi.* By its terms the case was "continued for sentence" until December 12, 1924, the defendant in the meanwhile being admitted to bail. The

record shows that on that date the defendant, plaintiff in error here, did not present himself in court for sentence. On the contrary, it appears that "Israel Cherry not being in court as required by the order . . . is this day defaulted; and the sureties on his bond . . . are this day defaulted." It is manifest that this is not a sentence. It is not a final judgment in the sense in which that term is used in a writ of error. A defendant in a criminal case, who runs away or who suffers himself to be defaulted and who is not sentenced, cannot invoke the aid of the law to correct errors in the record. Not having been sentenced, he fails to show that he has suffered harm by the alleged errors. If he does not submit himself to sentence as required by law, he is not in a position to ask the correction of errors.

The same principle applies if the proceedings for contempt be treated as partly civil and partly criminal, because, as already pointed out, in such circumstances the criminal aspect predominates. *Union Tool Co.* v. *Wilson*, 259 U. S. 107, 110.

If the contempt proceedings be regarded as *sui generis* and neither criminal nor civil, the same result follows. There has been no ending of the contempt proceedings in the court in which they are pending. In these circumstances writ of error does not lie; and this court will not intervene.

It has been frequently said that alleged errors of law may be presented to this court by report. There is no pretence that these questions have been reported.

From whatever aspect the case at bar is viewed, the plaintiff has not put himself in a position to invoke examination of his complaints on writ of error. The other questions argued need not be stated. The court cannot consider the case.

It follows that the entry must be,

*Writ of error dismissed.*