LORENZO SCOLA *vs.* LEWIS A. SCOLA.

Suffolk.    January 3, 1945. — March 2, 1945.

Present: FIELD, C.J., LUMMUS, QUA, WILKINS, & SPALDING, JJ.

*Contempt. Error, Writ of. Equity Pleading and Practice,* Contempt pro-' ceedings, Appeal.

A suit in equity is not transferred to this court by an appeal from a final decree until the appeal is entered in this court.

After the claiming of an appeal from a final decree in a suit in equity but before entry of the appeal in this court, the trial court had power to deal with a civil contempt committed by the defendant with respect to property which was the subject of the suit.

The defendant in a pending suit in equity to establish title to a vessel committed a civil contempt by removing the vessel from the Commonwealth for the purpose of precluding any effective decree in the suit.

A decree, adjudging the defendant in a suit in equity in contempt in removing from the Commonwealth property constituting the subject of the suit and ordering his imprisonment until he should return the property or give bond or make a payment into court for the protection of the plaintiff, was an adjudication of civil, not of criminal contempt.

A writ of error does not lie to review a decree of a court of equity dealing with civil contempt.

WRIT OF ERROR, issued from the Supreme Judicial Court for the county of Suffolk on September 13, 1944.

The case was reserved and reported, without decision, by *Ronan, J.*

*H. C. Thompson,* for the plaintiff in error.

*T. D. Lavelle & S. M. Whalen,* for the defendant in error, submitted a brief.

LUMMUS, J.    This case arises out of a bill in equity brought by Lewis A. Scola against his father, Lorenzo Scola, to establish title to a half interest in the fishing vessel "Richard J. Nunan." In a decision made at the present consultation the plaintiff's title was established. *Scola* v. *Scola, ante,* 1.

On June 29, 1944, an interlocutory decree of the Superior Court restrained Lorenzo Scola until the further order of the court from selling, conveying, mortgaging or in any way disposing of or encumbering the "Richard J. Nunan" and from removing said vessel from the jurisdiction of the court except to make fishing trips out of the ports of Gloucester and Boston. On August 4, 1944, a final decree was entered in the Superior Court, establishing the title of Lewis A. Scola to a half interest in the vessel, and ordering a conveyance thereof to him. The entry of the final decree vacated the interlocutory injunction (*Lowell Bar Association* v. *Loeb,* 315 Mass. 176, 189), no similar injunction was inserted in the final decree, and none was granted under G. L. (Ter. Ed.) c. 214, §§ 21, 22. Lorenzo Scola appealed from the final decree on August 18, 1944, and entered his appeal in this court on December 7, 1944, thus vacating the final decree and transferring the case to this court as of December 7, 1944. *Lowell Bar Association* v. *Loeb,* 315 Mass. 176, 189.

On July 30, 1944, before the entry of the final decree in the Superior Court, and while the interlocutory injunction was in full force, Lorenzo Scola violated that injunction by causing the vessel to be taken from Gloucester to Portland, Maine, where it was libelled in admiralty by creditors whose claims were created by him, and sold to satisfy those claims. His purpose was to deprive the courts of this

Commonwealth of jurisdiction over the vessel. Upon proceedings for contempt begun on August 22, 1944, after the appeal from the final decree, the Superior Court on September 8, 1944, before the entry of the appeal in this court, adjudged Lorenzo Scola in contempt, and ordered that he be imprisoned in jail until he should return the vessel or give a bond with surety in the penal sum of $5,000, or pay that sum into court, for the protection of the plaintiff in the equity suit. He was committed to jail accordingly.

On September 12, 1944, Lorenzo Scola filed a petition for a writ of error, and the writ issued on the following day. The defendant in error, Lewis A. Scola, pleaded in nullo est erratum. A single justice of this court, without making any decision, reserved the case for the full court. It is not suggested that Lorenzo Scola was unable to obtain his freedom on the terms stated in the order of September 8, 1944.

The plaintiff in error contends that the Superior Court on September 8, 1944, lacked power to deal with the contempt committed on July 30, 1944, because the interlocutory decree of injunction, though in full force on July 30, 1944, expired upon the entry of final decree on August 4, 1944. Some authority in support of his position can be found in other jurisdictions, though the authorities are divided. *Canavan* v. *Canavan*, 18 N. M. 640, 51 L. R. A. (N. S.) 972. *Warder* v. *Shufeldt*, 40 N. M. 442, 447, 448. We need not decide the question, although *Wireless Specialty Apparatus Co.* v. *Priess*, 246 Mass. 274, goes far toward supporting the action of the Superior Court. The equity case remained pending in the Superior Court until December 7, 1944, and until that date no other court had jurisdiction to punish for contempt. The proceedings in contempt were not wholly dependent upon the interlocutory decree, for the removal of the vessel from the Commonwealth for the purpose of precluding any effective decree in our courts was a contempt, independently of any injunction. *Merrimack River Savings Bank* v. *Clay Center*, 219 U. S. 527. *Berry* v. *Midtown Service Corp.* 104 Fed. (2d) 107, 109, 110; 122 Am. L. R. 1341, 1343.

Plainly the Superior Court dealt with the contempt

civilly and not criminally. The imprisonment ordered was merely a sanction to compel the contemnor to furnish protection to the civil rights of the plaintiff in the equity suit. It was to end as soon as that protection should be furnished. *Frankel* v. *Frankel*, 173 Mass. 214, 216. *Cherry* v. *Cherry*, 253 Mass. 172. *Opinion of the Justices*, 301 Mass. 615. *Commonwealth* v. *Hudson*, 315 Mass. 335, 346, 347, and cases cited. *New England Novelty Co. Inc.* v. *Sandberg*, 315 Mass. 739, 749. *Bessette* v. *W. B. Conkey Co.* 194 U. S. 324. *Fox* v. *Capital Co.* 299 U. S. 105. *McCrone* v. *United States*, 307 U. S. 61. *Raymor Ballroom Co.* v. *Buck*, 110 Fed. (2d) 207. 12 Am. Jur., Contempts, § 6.

We need not determine in this case the correct method of reviewing a decree in proceedings for civil contempt. *Commissioner of Banks* v. *Tremont Trust Co.* 267 Mass. 331. *New England Novelty Co. Inc.* v. *Sandberg*, 315 Mass. 739, 746, et seq. *Bessette* v. *W. B. Conkey Co.* 194 U. S. 324. *Lamb* v. *Cramer*, 285 U. S. 217. *Fox* v. *Capital Co.* 299 U. S. 105. *McCrone* v. *United States*, 307 U. S. 61, 65. *Rivers* v. *Miller*, 112 Fed. (2d) 439. *In re Eskay*, 122 Fed. (2d) 819. *Dickinson* v. *Rinke*, 132 Fed. (2d) 884. *Fenton* v. *Walling*, 139 Fed. (2d) 608. *Mason* v. *Siegel*, 301 Mich. 482. *Wetzel* v. *Bessemer Bar Association*, 242 Ala. 164.

Although a sentence for a criminal contempt is a judgment in a criminal case which may be reëxamined upon writ of error under G. L. (Ter. Ed.) c. 250, § 9 (*New England Novelty Co. Inc.* v. *Sandberg*, 315 Mass. 739, 747, 748), a writ of error will not lie to review a decree in civil proceedings in equity, whether for civil contempt or not. *Evans* v. *Hamlin*, 164 Mass. 239. *Cherry* v. *Cherry*, 253 Mass. 172. *Blankenburg* v. *Commonwealth*, 260 Mass. 369, 371, 373. Under the settled law as determined in the cases cited, the entry must be

*Writ of error dismissed.*